FILED
TARRANT COUNTY
4/15/2020 3:17 PM
THOMAS A. WILDER
DISTRICT CLERK

CAUSE NO. 236-316472-20 _____

| | | |
|---|---|---|
| **PEDIAPLEX MANAGEMENT, LLC,** | § § § | IN THE DISTRICT COURT |
| *Plaintiff,* | § § | |
| v. | § § | \_\_\_ JUDICIAL DISTRICT |
| | § § | |
| **CB FENCE AND EXTERIORS, INC., AND BLAKE VAN KLEEF,** | § § § | |
| *Defendants.* | § | TARRANT COUNTY, TEXAS |

### PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff PediaPlex Management, LLC ("Plaintiff") files this Original Petition and Requests for Disclosure against Defendant CB Fence and Exteriors, Inc. and Defendant Blake Van Kleef (collectively "Defendants"), and respectfully shows the Honorable Court as follows:

### I.
### DISCOVERY LEVEL

1.  Pursuant to the TEXAS RULES OF CIVIL PROCEDURE, Plaintiff requests that this case be governed by a Level 3 Scheduling Order with dates negotiated by the parties or entered by the Court in absence of an agreement by the parties.

### II.
### PARTIES

2.  Plaintiff PediaPlex Management, LLC is a limited liability company organized under the laws of the State of Texas.

3. Defendant <u>CB Fence and Exteriors, Inc.</u> ("Defendant CBFE") is a corporation formed under the laws of the State of Texas. Defendant CBFE may be served with process by serving citation and a copy of this petition <u>upon its registered agent, Blake Van Kleef, at 1341 Bonham Pkwy., Lantana, Texas 76226</u>, or wherever he may be found.

4. Defendant <u>Blake Van Kleef</u> ("Defendant Van Kleef") is an individual residing in Texas. Defendant Van Kleef may be served with process by serving him with citation and a copy of this petition at <u>1341 Bonham Pkwy., Lantana, Texas 76226</u>, or wherever he may be found.

### III.
### JURSIDICTION, VENUE, AND TRCP 47 STATEMENT

5. This Court has subject matter jurisdiction over this matter because the amount in controversy is within the jurisdictional limits of the Court, and the Plaintiff seeks only monetary relief of over $200,000.00, but less than $1,000,000.00, and all other relief to which Plaintiff deems itself entitled.

6. Venue is proper in Tarrant County, Texas pursuant to Section 15.002(a)(1) of the TEXAS RULES OF CIVIL PROCEDURE, as this is the county in which all or a substantial part of the events or omissions giving rise to the claim occurred.

### IV.
### STATEMENT OF FACTS

7. On or about May 15, 2018, Defendants executed a fixed-price contract of $314,997.00 ($62.50 per square foot) with Plaintiff (the "Contract") to perform the project located at 4537 Heritage Trace Parkway, Bldg. 11A, Fort Worth, Texas 76244 (the "Property" and/or the "Project").

8. Pertinent to the matter at bar, Section 4 of the Contract expressly states that *"time is of the essence."* Accordingly, Defendants materially represented to Plaintiff that the Project would be completed by October 1, 2018. Plaintiff relied on such representation and calendared October 1, 2018, as its commencement date for transacting business and generating revenue.

9. On or about July 26, 2018, Defendants began performance of the Project.

10. Subsequently thereafter, Defendants defaulted under the terms of the Contract by failing to complete the Project by the agreed-upon completion date. In fact, Defendants did not complete the Project until the end of November 2018. Such delay was solely caused by Defendants' lack of management and oversight, poor workmanship, failure to pay subcontractors and to timely order materials, and repeat needs to re-do defective work. Defendants' failure to perform in accordance with the Contract has caused substantial injury to Plaintiff.

11. In addition to Defendants' failure to adhere to the Project's completion date, Defendants' work was of such poor quality and craftsmanship that it will require correction at an additional expense to Plaintiff.

12. Despite Defendants' failure to perform under the four corners of the Contact, Plaintiff paid the amount due to Defendants in accordance with the terms of the Contract. Plaintiff's performance of payment is evidenced by lien waivers executed and presented to Legacy Bank (the "Lien Waivers"). Within the Lien Waivers, Defendant Van Kleef represented that Defendant CBFE had paid or would pay its subcontractors, materialmen, and suppliers for their work on the Project.

13. After Plaintiff tendered payment of the amount due and owing under the Contract, Defendants made repeat demand for additional payment. Defendants sought payment of an additional $70,997.25 spent on alleged labor and materials for the Project. Plaintiff refused to pay such demand as the parties had executed a *fixed-price contract*. Critically, under this type of contract, the responsibility for managing the work to meet the needs of the project falls squarely upon the contractor and the stipulated contract sum is both vital and controlling.

14. Further, Defendants' demand was without merit because Defendants failed to follow the change order procedure outlined in Section 6 of the Contract whereby Defendants were required to submit written detailed estimates, with supporting calculations, pricing and adjustments in the schedule of the change to the Contract price and Contract time. Throughout the entirety of the Project, no change orders were ever presented to Plaintiff nor were any approvals for changes in the work or time authorized by Plaintiff.

15. Despite the aforementioned facts, Defendants filed a mechanic's and materialmen's lien (the "Lien") against the Property for the allegedly unpaid sum of $70,997.25. Defendants' encumbered Plaintiff's interest in the Property by way of filing the fraudulent and meritless Lien.

16. On August 21, 2019, Plaintiff sent a demand letter seeking immediate release of the invalid and fraudulent Mechanic's Lien & demand for payment (the "Demand Letter") to Defendants via certified mail. A true and correct copy of the Demand Letter is attached hereto as <u>Exhibit A-1</u> and incorporated herein by reference as if verbatim.

17. Ultimately, Plaintiff was forced to tender $25,000.000 to Defendants to effect a timely release of the fraudulent Lien because Plaintiff was trying to close on a loan that required removal of the fraudulent lien. Note that Plaintiff continues to vehemently deny the validity of the Lien and only agreed to resolution by way of the settlement offer to timely extinguish the fraudulent Lien and free its interest in the Property.

18. Defendants' failure to timely and properly complete the Project constitute material breach under the Contract. Plaintiff has suffered substantial damages due to Defendants' egregious delay in competition of the Project (7+ weeks). The two-month delay resulted in a total net income loss of $108,614.92.

19. Defendants' filing of the fraudulent lien caused Plaintiff to suffer substantial damages in the amount of $25,000 to effect removal of the same.

20. As a result, Plaintiff was required to retain legal counsel to pursue its legal claims. All conditions precedent have been performed or occurred pursuant to TEXAS RULE OF CIVIL PROCEDURE 54.

V.
CAUSES OF ACTION

BREACH OF CONTRACT

21. Plaintiff reincorporates and realleges the factual allegations contained in the preceding paragraphs.

22. Plaintiff and Defendants entered into a valid, enforceable Contract for performance of the Project. Defendants breached such Contract in a material fashion, as more particularly pleaded in the preceding paragraphs. Defendants' breach has

caused Plaintiff injury. As a direct and proximate consequence of Defendants' breach of contract, Plaintiff has suffered actual and consequential damages.

23. Subsequent to Defendants' breach, Plaintiff presented its claim to Defendants and made a demand in compromise of its damages. Defendants have not tendered the just amount owed. As a result, Plaintiff retained counsel to pursue its claim and seeks recovery of reasonable attorney's fees as allowed by TEXAS CIVIL PRACTICE AND REMEDIES CODE SECTIONS 38.001 through 38.006.

24. All conditions precedent have been performed or have occurred as required by TEXAS RULE OF CIVIL PROCEDURE 54.

## **VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT (DTPA)**

25. Plaintiff reincorporates and realleges the factual allegations contained in the preceding paragraphs.

26. The acts and omissions of Defendants discussed herein give rise to numerous violations of the TEXAS DECEPTIVE TRADE PRACTICES-CONSUMER PROTECTION ACT, TEX. BUS. & COM. CODE §§ 17.41-63 (the "DTPA"). Defendants' violation of the DTPA include conduct such as:

   a) Engaged in an "unconscionable action or course of action" by taking advantage of Plaintiff to a grossly unfair degree;

   b) Represented that goods or services have approval, characteristics, uses, benefits, or quantities which they do not have;

   c) Represented that goods or services are of a particular standard, quality, or grade which they are not;

   d) Represented that an agreement confers or involves rights, remedies, or obligations which it does not have or involve;

e) Represented that work or services have been performed when the work or services were not performed; and

f) Failure to disclose information about goods or services that was known at the time of the transaction.

27. The deceptive and unconscionable acts and practices described herein are the producing cause of actual economic damages to Plaintiff. Furthermore, because Defendants acted knowingly and/or intentionally, Plaintiff is entitled to recover treble economic damages pursuant to the statutory authority of DTPA § 17.50(d) and (e).

28. Plaintiff is considered a consumer under the DTPA and all conditions precedent to Plaintiff's claims under DTPA have been performed, have occurred, or have been excused.

### VIOLATIONS OF CHAPTER 12 TEXAS CIVIL PRACTICE & REMEDIES CODE

29. Plaintiff reincorporates and realleges the factual allegations contained in the preceding paragraphs.

30. Plaintiff seeks and prays for a monetary judgment against Defendants of not less than $10,000, plus the interest which accrues thereon, in actual damages for Defendants' making, presenting, and using of a document and other records (i.e. the Lien) to assert a fraudulent claim against Plaintiff's interest in real property, pursuant to TEXAS CIVIL PRACTICE & REMEDIES CODE § § 12.002(a) and (b), and § 12.003, as described above. In this regard, on information and belief Plaintiff would show that Defendants, acting in conspiracy with one another, presented and/or used a document or other record with:

    a. Knowledge that the document or other record was a fraudulent claim against Plaintiff's interest in real property (i.e. the Property);

    b. Intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state, evidencing a valid lien or claim against Plaintiff's interest in real property; and

    c. Intent to cause another person (i.e. Plaintiff) to suffer (a) financial injury. See TEX. CIV. PRAC. & REM. CODE § § 12.002(a).

31. Therefore, Defendants are liable, jointly and severally, to Plaintiff for:

    a. The greater of $10,000.00 or the actual damages caused by Defendants' violations pursuant to TEX. CIV. PRAC. & REM. CODE § 12.002(b)(1);

    b. Court costs, pursuant to TEX. CIV. PRAC. & REM. CODE § 12.002(b)(2);

    c. Reasonable attorney's fees, pursuant to TEX. CIV. PRAC. & REM. CODE § 12.002(b)(3);

    d. Exemplary damages in an amount determined by the Court, pursuant to TEX. CIV. PRAC. & REM. CODE § 12.002(b)(3).

## VI.
## DAMAGES

32. Plaintiff has suffered actual economic injury as a result of Defendants' conduct complained of herein in an amount which exceeds the jurisdictional limits of this Court.

33. Further, Plaintiff has sustained incidental and consequential damages as a result of Defendants' aforementioned conduct as Plaintiff has experienced significant interruption to its business and lost profits resulting from the delay in the Project.

34. Because Defendants acted knowingly and/or intentionally, Plaintiff is entitled to recover treble economic damages pursuant to the statutory authority of

the DTPA § 17.50(b), as well as a mandatory award of attorney's fees and prejudgment interest under § 17.50(d) and (e).

35. Because it was necessary for Plaintiff to retain attorneys to prosecute Plaintiff's statutory causes of action against Defendants for violating TEX. CIV. PRAC. & REM. CODE § 12.002(a). Consequently, in addition to the greater of Plaintiff's actual damages or the statutory damages, Plaintiff also seeks exemplary damages in amount determined by the Court, court costs, and attorney's fees for prosecuting Plaintiff's statutory claims through trial against the Defendants and thru all levels of appeal, in the event an appeal is perfect, pursuant to TEX. CIV. PRAC. & REM. CODE § 12.002(b)(3).

## VII.
## ATTORNEY'S FEES

36. Prior to filing this suit, Plaintiff made written demand on Defendants. A true and correct copy of the Demand Letter is attached hereto as <u>Exhibit A-1</u> and incorporated herein by reference as if verbatim. Defendants refused and failed to tender the amount demanded in Plaintiff's written demand. As such, Plaintiff is entitled to recover its reasonable and necessary attorney's fees under TEX. CIV. PRAC. & REM. CODE § 38.001 and TEX. BUS. & COM. CODE § 17.50 (d) and (e).

## VIII.
## CONDITIONS PRECEDENT

37. All conditions precedent to Defendants' liability have been performed or have occurred.

## IX.
## REQUEST FOR DISCLOSURE

38. Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Defendants are requested to disclose to Plaintiff, within fifty (50) days of service of this request, the information or material described in Rule 194.2.

## X.
## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff PediaPlex Management, LLC requests that the Court enter judgment against Defendants, and that Plaintiff recover its actual damages, statutory damages, treble damages, exemplary damages, costs of Court, attorney's fees, pre-judgment and post-judgment interest, and all other relief to which it may be justly entitled.

Respectfully submitted,

**SCHEEF & STONE, L.L.P.**

*/s/ T. Chase Garrett*

**T. Chase Garrett**
State Bar No. 24069764
chase.garrett@solidcounsel.com
**Jessica L. Rolls**
State Bar No. 24116986
jessica.rolls@solidcounsel.com
2600 Network Blvd., Suite 400
Frisco, Texas 75034
(214) 472-2100 Telephone
(214) 472-2150 Telecopier

*Attorneys for Plaintiff*

August 21, 2019

**SENT VIA CERTIFIED MAIL RRR # 7019 0700 0001 2807 1401**
**U.S. FIRST CLASS MAIL**
**EMAIL: CKARM@CUTLER-SMITH.COM**
**EMAIL: SCUTLER@CUTLER-SMITH.COM**
CB Fence and Exteriors, Inc.
c/o Cutler-Smith
Park Central 7
12750 Merit Drive, Suite 1450
Dallas, Texas 75251

> **RE:** Demand to Immediately Release the Invalid and Fraudulent Mechanic's Lien Filed by CB Fence and Exteriors, Inc. against the PediaPlex Project Located at 4537 Heritage Trace Parkway, Bldg. 11A, Fort Worth, Texas 76244 (the "**Property**" and/or "**Project**").

### DEMAND FOR IMMEDIATE RELEASE OF INVALID AND FRAUDULENT MECHANIC'S LIEN & DEMAND FOR PAYMENT

Ms. Karm:

Please be advised that PediaPlex retained this firm to enforce its claims against CB Fence and Exteriors, Inc. ("**CBE**") and Blake Van Kleef in connection with an invalid and fraudulent mechanic's lien filed against the above-referenced Property (hereinafter, the "**Lien**") and damages sustained by PediaPlex as a result of CBE's failures on the Project. The purpose of this letter is to serve formal and final notice that the Lien is invalid for the reasons discussed below and to provide CBE with a final opportunity to release the Lien prior to PediaPlex moving forward with its claims. Time is of the essence, and as such, CBE has until **August 30, 2019** to release the invalid Lien and remit payment of $108,292.15 to PediaPlex for the damages outlined below. If CBE fails to do so, PediaPlex will move forward with having the Lien removed judicially and will recover monetary damages stemming from the fraudulent lien and the contractual claims described below.

In May of 2018, PediaPlex and CBE entered into a fixed-price agreement in the amount of $314,997.00 ($62.50 psf) (the "**Contract**"). Section 4 of the Contract expressly states that "*time is of the essence*" and CBE represented that the Project would be completed by October 1, 2018. Despite this, CBE did not complete the Project until the end of

November resulting in substantial damages to PediaPlex.  This was one of many egregious failures of CBE on the Project. The delays were attributable solely to CBE due to lack of management and oversight, poor workmanship, failures to pay subcontractors, failures to timely order materials and having to re-do defective work. The damages caused by these delays are discussed in further detail below.

Section 6 of the Contract speaks to any changes in the work. This section required CBE to submit "*detailed estimates, with supporting calculations, pricing and adjustments in the schedule of the change to the Contract Price and Contract Time.*" Moreover, Section 6 requires the owner, PediaPlex, to approve any changes in writing. Throughout the Project, no change orders were ever presented by CBE to PediaPlex nor were any approvals for changes in the work authorized or signed by PediaPlex. Thus, the fixed-price of the Contract, **$314,997.00**, was never increased. Despite having an agreed upon Contract price of $314,997.00, Mr. Van Kleef of CBE is now claiming, under oath, that CBE is owed an additional $70,997.25 which alleges that the Contract price ballooned to $385,994.25 without any authorized change orders from PediaPlex. This claim is fraudulent and without merit and is even more egregious considering that CBE has encumbered PediaPlex's interest in the property by way of an invalid mechanic's lien. Frankly, I am surprised that your firm would advocate for CBE considering the clear legal and factual defects with its claim, but I appreciate the fact that CBE has likely not shed light on all of the underlying facts which is the purpose of this correspondence.

The reason for Mr. Van Kleef and CBE's pursuit of the fraudulent lien claim is clear— CBE underbid the job and wants more profit. Mr. Van Kleef clearly does not understand the risk that an original contractor takes on under a fixed-price agreement. Under this type of contract, the responsibility for managing the work to meet the needs of the project is focused on the contractor and the stipulated contract sum is vital and controlling. One of the main risks associated with fixed-price contracts are the costs associated with project change. CBE is clearly alleging there were substantial changes to the Project, which PediaPlex vehemently denies. Nonetheless, CBE failed to follow the Change Order procedure in the Contract and changes in the fixed price were never authorized or approved by PediaPlex. The Contract price is, and always will be, $314,997.00. CBE is not entitled to circle back upon completion and try to assert additional charges just to pad its profit margin. The inflated claim of an additional $70,997.25 fails both legally and factually and PediaPlex is prepared to take swift action to extinguish the fraudulent Lien.

It is undisputed that CBE received payment of $299,340.00 from Highland Terrace for its work at the Property. This is evidenced by lien waivers executed and presented to Legacy Bank. Within these lien waivers, Mr. Van Kleef represented that CBE had paid or would pay its subcontractors, materialmen, and suppliers for their work. These were misrepresentations as PediaPlex discovered that CBE consistently violated the Trust Fund Statute and failed to pay its subcontractors. Setting that aside, a remaining amount of $15,657.00 of the fixed price Contract would presumably be owed to CBE by PediaPlex taking into account the $299,340.00 received from Highland Terrace. However, PediaPlex only owed $2,822.77 at the conclusion of the Project due to payments made throughout the Project for labor, materials, permits etc. The breakdown is as follows:

| | | |
|---|---|---|
| Original Bid /Contract Amount | | $314,997.00 |
| Developer Paid Blake | | $299,340.00 |
| Difference | | **$15,657.00** |
| Sonia Paid the Partitions because Blake Did not have the money (This was part of the contract price) | Backed off of amount owed | $7,722.45 |
| Sonia had to pay to replace doors closers because the contractors lost them | | $688.03 |
| Less: Cost of Temporary Permit for Delay in Opening | | $300.00 |
| Less: $2500 Permit Fee | | $2,500.00 |
| Less: Sonia had to pay for overall cleaning - Backcharge | | $1,623.75 |
| Overall Difference | | **$2,822.77** |

As outlined above, the maximum amount due to CBE at the conclusion of the Project was $2,822.77. However, when taking into account the damages suffered by PediaPlex due to the egregious delay in completion (7+ weeks), CBE owes a substantial amount to PediaPlex. A contractor who has not performed a contract in due time is liable for delay damages absent waiver. CBE's Contract has no waiver of delay or consequential damages and the delays in completion and opening of the business are directly attributable to CBE. Again, CBE represented that the Project would be complete and PediaPlex would open for business by October 1, 2018. Due to failures of CBE such as lack of management and oversight, poor workmanship, failures to pay subcontractors, failures to timely order materials, having to re-do defective work, and related issues, the business did not open until the Monday following Thanksgiving. This resulted in two months of loss for PediaPlex, which CBE is liable for. The net income lost by PediaPlex resulting from the delay is **$108,614.92**. This takes into account the total income lost for October and November and the expenses incurred by PediaPlex. In summary, PediaPlex is seeking the following damages from CBE:

| ITEM | AMOUNT |
|---|---|
| Delay Damages | $108,614.92 |
| Disputed Remaining Balance due to CBE | ($2,822.77) |
| Attorneys' Fees and Costs | $2,500.00 |
| **TOTAL OWED TO PEDIAPLEX** | **$108,292.15** |

Clearly CBE's failures to timely and properly complete the Project constitute material defaults under the Contract. In addition to its claims for breach of contract, PediaPlex intends to pursue claims against CBE and Mr. Van Kleef personally under Section 17.41,

et seq., of the TEXAS BUSINESS AND COMMERCE CODE, commonly known as the Deceptive Trade Practices Act (the "DTPA"). Under the DTPA, it is an unfair or deceptive act or practice to:

(i) represent that goods or services have approval, characteristics, uses, benefits, or qualities that they do not have (TEX. BUS. & COM. CODE § 17.46(b)(5));

(ii) represent that goods or services are of a particular standard, quality, or grade which they are not (TEX. BUS. & COM. CODE § 17.46(b)(7));

(iii) represent that an agreement confers or involves rights, remedies, or obligations which it does not have or involve (TEX. BUS. & COM. CODE § 17.46(b)(12);

(iv) represent that work or services have been performed when the work or services were not performed (TEX. BUS. & COM. CODE § 17.46(b)(22)); and

(v) fail to disclose information about goods or services that was known at the time of the transaction (TEX. BUS. & COM. CODE § 17.46(b)(24)).

As explained herein, we feel strongly that CBE, as well as Mr. Van Kleef, have violated these and other sections of the DTPA. It is clear that CBE and Mr. Van Kleef have misrepresented the character, extent, and amount of work performed on the Project. These false representations and deceptive means are intolerable and if necessary, will be fully prosecuted to the extent permitted by law.

Violations of the foregoing provisions may cause CBE and Mr. Van Kleef to be liable for treble or up to three times the amount of the economic damages suffered by PediaPlex. (TEX. BUS. & COM. CODE § 17.50). Be advised that the individual who engages in the conduct in violation of the DTPA is personally liable for the violations regardless of the subsequent status of the entity whose behalf the individual was acting for. There is strong evidence which indicates that multiple provisions of the DTPA have been violated.

It is clear that when filing the Lien CBE and Mr. Van Kleef were either unaware of the strict requirements for filing and maintaining a valid mechanic's lien or blatantly chose to ignore Texas lien law. In any event, CBE has now been formally made aware of fatal defects with the Lien, which render the Lien invalid, fraudulent, and unenforceable. CBE cannot correct the foregoing defects and must immediately release the Lien. Chapter 53 of the TEXAS PROPERTY CODE provides a quick and effective method of removing invalid liens, which only requires the filing of a petition requesting removal and setting a hearing within 21 days of the lien claimant answering and appearing in the proceeding. Be forewarned that Chapter 53 **requires the Court to award all reasonable and necessary attorneys' fees and costs to the prevailing party in a suit to remove an invalid lien**. [TEXAS PROPERTY CODE Section 53.156]. Thus, if the lien is not immediately released, PediaPlex will be entitled to recover all attorneys' fees incurred to secure the removal of the lien. We have prosecuted many such lawsuits and you can expect attorneys' fees to meet or exceed **$15,000.00** for such relief.

CBE should be further warned that PediaPlex intends to seek sanctions under Chapter 12 of the Texas CIVIL PRACTICE AND REMEDIES CODE. Chapter 12 of the TEXAS CIVIL PRACTICE & REMEDIES CODE provides that anyone who **files or maintains a false or**

**fraudulent lien is liable for sanctions amounting to the greater of $10,000.00 or the actual damages caused by the violation**, not including possible exemplary damages, attorneys' fees, and costs. Pursuant to § 12.002(a) of the TEXAS CIVIL PRACTICE & REMEDIES CODE:

> a) A person may not make, present, or use a document or other record with:
> (1) knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;
> (2) intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state or the United States or another entity listed in Section 37.01, Penal Code, evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and
> (3) intent to cause another person to suffer:
>   (A) physical injury;
>   (B) financial injury; or
>   (C) mental anguish or emotional distress.

Furthermore, § 12.002(b) provides penalties for any person who violates the above provision:

> (b) A person who violates Subsection (a) or (a-1) is liable to each injured person for:
> (1) the greater of:
>   (A) $10,000; or
>   **(B) the actual damages caused by the violation**;
> (2) court costs;
> (3) reasonable attorneys' fees; and
> (4) exemplary damages in an amount determined by the court.

I would like to underscore Section 12.002(b)(1)(B) in bold font above. Unfortunately for CBE, the Lien at issue will cause actual damages which far exceed the $10,000.00 statutory penalty. There are serious consequences for this and PediaPlex intends to pursue full recovery of the damages that CBE's fraudulent claim have caused.

Finally, it is important to note that we have evidence that CBE and/or Mr. Van Kleef factored its fraudulent invoices in connection with the Project with YES Capital Group in or around June of 2019. Thus, CBE has been paid the amounts claimed in the Lien further

rendering the Lien invalid. This underscores the fraudulent and unenforceable nature of CBE's claim.

CBE's immediate attention to this matter is imperative. Please execute and return a Release of Lien to me via email or fax by **5:00 P.M. Central Standard Time on August 30, 2019**. If CBE fails to provide the executed and notarized Release of Lien within that timeframe, PediaPlex will move forward with formal action. Demand is also hereby made upon CBE for payment of **$108,292.15** to PediaPlex within the same deadline by cashier's check made payable to PediaPlex and delivered to Lovein Ribman, PC, 1225 Main St., Suite 200, Grapevine, Texas 76051.

Sincerely,
**LOVEIN | RIBMAN, P.C.**

Zak Presley